# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 08-20806-TLM** |
| **SARA JEAN VARNER,** ) | |
| ) | |
| ) | **Chapter 13** |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

_____

This Decision addresses the objections of C. Barry Zimmerman, the chapter 13 trustee ("Trustee"), to the proposed chapter 13 plan of debtor Sara Varner ("Debtor"). *See* Doc. Nos. 33, 35, 39 (Trustee's recommendation, objection, and memorandum). Though the parameters of his objections are not precisely drawn, the Court understands Trustee to level four basic challenges to the plan.

First, Trustee contends that under § 707(b)(2)(A)(iii)(I),[1] Debtor has improperly included mortgage payments for a condominium she no longer lives in and intends to surrender. Second, Trustee contends that, if the mortgage payments are proper expenses, Debtor cannot "double dip" by also claiming a standard rental

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 1

allowance in addition to the mortgage expense. Third, Trustee challenges Debtor's good faith in filing her petition and in proposing her plan. Fourth, and finally, Trustee objects to the plan's "tax refund language."

For the reasons expressed below, the Court will reserve decision on the good-faith objection, pending supplementation of the record. The Court will overrule Trustee's remaining objections.

**FACTS**

The parties filed a stipulation of facts. *See* Doc. No. 40. The other factual matters discussed are simply matters of the pleading record. No evidence was submitted at hearing. The agreed facts are as follows.

Debtor filed her chapter 13 bankruptcy petition on November 21, 2008. Ten months earlier, in January, 2008, she signed a lease on an apartment in Lewiston, Idaho, and vacated her condominium in Moscow, Idaho. Prior to January, 2008, the condominium had been her residence. The Lewiston apartment she moved into cost her $500.00 per month in rent. Debtor had two mortgage obligations on the condominium, one for $490.00 per month to a creditor identified as Chase and a second for $434.00 per month to creditor Di-Tech. These total $924.00 per month, and Trustee and Debtor have agreed that "[a]s of the date of filing [the petition] . . . the two mortgages were still contractually due and owning [*sic*, owing]." Doc. No. 40.

Debtor's schedules I and J, filed with her petition, showed monthly income

MEMORANDUM OF DECISION - 2

of $2,794.00 and expenses of $2,170.00, leaving a net $624.00 available to pay creditors. Doc. No. 1.

Debtor also filed her required Form 22C. Doc. No. 10. Because Debtor's annualized income is higher than the applicable median family income for the state of Idaho and her one-member household size, she is an above-median-income chapter 13 debtor. *Id.* at lines 12-17 and 18-23. Her Form 22C therefore sets forth Debtor's expenses in accordance with § 707(b)(2) and § 1325(b)(3). *Id.* at Part IV, lines 24A through 59.

Debtor's calculations and assertions of expenses left her with a negative $413.39 in disposable income. *Id.* at line 59.[2]

In reaching these results, Debtor's Form 22C claims a $650.00 standard mortgage/rent expense on line 25B[3] and $924.00 in secured debts to Chase and Di-Tech on the Moscow condominium at lines 47(a) and (b).

Debtor's chapter 13 plan proposes to "surrender" the condominium securing Chase and Di-Tech. *See* Doc. No. 5 ("Plan") at § 6.2. Debtor has

---

[2] Debtor's Form 22C contains a mathematical error. Debtors compute the line 59 amount by subtracting total adjustments on line 58 (which Debtor reports at $5,237.66) from total current monthly income on line 53 (which Debtor reports as $4,868.80). On Debtor's assertions, the correct line 59 amount would be a negative $368.86, not the negative $413.39 she claimed.

[3] The $650.00 figure is from the IRS Housing and Utility Standards. *See* http://www.usdoj.gov/ust/eo/bapcpa/20081001/bci_data/housing_charts/irs_housing_charts_ID.htm (last visited May 22, 2009). As noted earlier, the parties stipulated that Debtor actually pays $500 per month for the Lewiston apartment. Although Trustee initially objected to Debtor's claiming $650.00 (rather than the "actual" $500.00) in rental expense, he has since withdrawn that objection.

MEMORANDUM OF DECISION - 3

apparently ceased paying the creditors. *See* Doc. No. 1 at sched. J (showing $500.00 rent payment only); Doc. No. 19 (Chase stay relief motion, alleging lack of monthly payments May, 2008 through December, 2008).

Debtor's Plan proposes making payments over a three-year period, consisting of twelve monthly payments of $400.00 each and then twenty-four monthly payments at $91.00, for a total of $6,984.00 in "periodic plan payments" plus provision to Trustee of her "net" tax refunds. Doc No. 5 at § 1.1, § 1.2.1.[4]

**DISCUSSION AND DISPOSITION**

  A.  **The relevant statutory framework**[5]

Debtor's Plan does not propose to pay 100% of all creditors' claims, and Trustee has objected to the Plan. Consequently, this Court cannot confirm the Plan unless, as of the effective date of the Plan, Debtor commits all her "projected disposable income to be received in the applicable commitment period" to paying unsecured creditors. § 1325(b)(1).[6]

---

  [4] The suggested Plan payments are not driven by a lack of funds; the net monthly income shown on schedules I and J of $624.00 has not changed. The payments are instead a result of the calculations of Debtor and her counsel of the minimum amount she is required to fund under *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008), assuming Debtor's assertion of negative projected disposable income on Form 22C is upheld. The bulk of the Plan payments will go to Trustee's fees and a proposed $5,000.00 in counsel's fees.

  [5] The statutes and rules generally applicable to above-median-income chapter 13 debtors are explained more fully in *In re Meek*, 370 B.R. 294, 297-99, 304-06, 308-10, 07.2 I.B.C.R. 23 (Bankr. D. Idaho 2007), *partially abrograted by Kagenveama*, 541 F.3d 868.

  [6] Debtor's Form 22C concedes that she is an above median debtor and that the applicable commitment period in her case is 5 years. Doc. No. 10 at Part II, lines 12-17; *see also*
(continued...)

MEMORANDUM OF DECISION - 4

The Bankruptcy Code does not define "*projected* disposable income," but "disposable income" is defined as "current monthly income"[7] minus "amounts reasonably necessary to be expended" for the support and maintenance of the debtor. § 1325(b)(2).

Debtor's current monthly income, reported as $4,868.80 on Form 22C, is not at issue here. Rather, this dispute involves the expense side of the calculation – the "amounts reasonably necessary to be expended" for Debtor's maintenance and support. Because Debtor is an above-median-income chapter 13 debtor, her expenses must be determined in accordance with the means test set forth in § 707(b)(2)(A) and (B), incorporated by § 1325(b)(3).

Broadly speaking, there are three basic categories of allowed expenses under the means test: living expenses, secured-debt payments, and priority debt payments. *See* § 707(b)(2)(A)(ii), (iii), (iv). *See generally In re Meek*, 370 B.R. at 308-11 (summarizing the means test in more detail).

---

[6](...continued)
§ 1325(b)(4). She proposes a shorter Plan term based on *Kagenveama*, 541 F.3d at 876-77 (holding that absence of positive disposable income figure eliminates five-year applicable commitment period requirement). Trustee does not dispute this approach *assuming* a negative projected disposable income. However, any positive figure on line 59 of a correctly completed Form 22C would require Debtor to propose an amended plan with a 60-month term of payment and in amounts sufficient to satisfy § 1325(b)(1)(B).

[7] Current monthly income is itself defined as debtor's average monthly income during the six calender months before the bankruptcy filing. *See* § 101(10A).

MEMORANDUM OF DECISION - 5

**B.    Trustee's objection relating to Debtor's claimed mortgage expense for the condominium she intends to surrender**

In his first objection, Trustee contends Debtor cannot properly deduct mortgage payments for collateral she intends to surrender.

Secured-debt expenses are addressed in § 707(b)(2)(A)(iii), which provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–
>
> (I)    the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II)    any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

This section requires the debtor to total all debt payments that are "scheduled as contractually due to secured creditors[.]" Trustee contends that this phrase includes only those amounts that will be owing to secured creditors as of the effective date of the plan. *See* Doc. No. 39 (memorandum) at 3. This argument relies on the following, italicized language in § 1325(b)(1):

> If Trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, *as of the effective date of the plan –*

MEMORANDUM OF DECISION - 6

>     . . .
>     (B)  the plan provides that all of the debtor's projected
>          disposable income to be received in the applicable
>          commitment period beginning on the date that the
>          first payment is due under the plan will be applied
>          to making payments to unsecured creditors under
>          the plan.

(emphasis added).

Trustee argues that the plan creates a new contract between debtors and their pre-confirmation creditors. And under this new contract (*i.e.*, the plan), Debtor will owe nothing to secured creditors Di-Tech and Chase "as of the effective date of the plan" because she is surrendering the condominium. Thus, Trustee argues that Debtor cannot properly include the $924.00 of monthly condominium mortgage expense.[8]

Courts have split on this issue: some refuse to allow chapter 13 debtors to include secured-debt expenses for collateral that will be surrendered,[9] while others hold that these secured-debt expenses should be included in the debtor's

---

[8] Trustee does not, however, raise any issue as to whether Debtor correctly calculated the average monthly payments owing Chase and Di-Tech under the relevant loan documents, as reported on lines 47(a) and (b) of Form 22C. Consequently, the Court assumes Debtor accurately calculated these amounts under § 707(b)(2)(A)(iii).

[9] *See, e.g., In re Suess*, 387 B.R. 243, 247-48 (Bankr. D. Mo. 2008); *In re Van Bodegom Smith*, 383 B.R. 441, 452-55 (Bankr. E.D. Wis. 2008); *In re Coleman*, 382 B.R. 759, 763-64 (Bankr. W.D. Ark. 2008); *In re Spurgeon*, 378 B.R. 197, 201-02 (Bankr. E.D. Tenn. 2007); *In re McPherson*, 350 B.R. 38, 46 (Bankr. W.D. Va. 2006); *In re Crittendon*, 2006 WL 2547102, at *3-4 (Bankr. M.D.N.C. Sept. 1, 2006).

MEMORANDUM OF DECISION - 7

expenses.[10] *See generally* Hon. Ray C. Mullins & Elizabeth B. Rose, *Perfectly Clear or Clear as Mud? A Review of Selected BAPCPA Consumer Issues*, 2008 Norton Annual Survey of Bankruptcy Law Part II, § 1 n.23 (citing cases).

In *In re Kelvie*, 372 B.R. 56 (Bankr. D. Idaho 2007), this Court held that chapter 7 debtors may deduct mortgage payments under § 707(b)(2)(A)(iii) despite a stated intention under § 521 to surrender the collateral. *Kelvie*, though, clearly spoke to the function and operation of the means test in a chapter 7 environment as a "switching device." *Id.* at 61 (citation omitted). This Court has not yet decided the issue in the chapter 13 setting.

Trustee argues that *Kelvie* should be inapplicable to chapter 13 debtors because "[t]he view of a Chapter 13 is more forward looking . . . ." Doc. No. 39 at 3. The "forward-looking" analysis echoes that of this Court in *Meek*, 370 B.R. 294. However, viewing the means test – as incorporated in chapter 13 *via* § 1325 – through such a forward-looking lens is conceptually at odds with the Ninth Circuit's decision in *Kagenveama. Kagenveama* held that a chapter 13 debtors' "projected disposable income" is not determined based upon such a forward-looking view of the debtor's finances, but rather, should be mechanically calculated based upon the debtor's historical income. *Id.* at 874-75. In so holding,

---

[10] *See, e.g., In re Willette,* 395 B.R. 308, 327-28 (Bankr. D. Vt. 2008); *In re Burmeister*, 378 B.R. 227, 231 (Bankr. N.D. Ill. 2007); *In re Oliver*, 2006 WL 2086691, at *3 (Bankr. D. Or. June 29, 2006).

MEMORANDUM OF DECISION - 8

*Kagenveama* firmly instructed courts to apply the literal language of BAPCPA, leaving Congress to correct unintended consequences. *Id.* at 875 ("If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute.") (citing *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)).

With this instruction in mind, the Court turns to § 707(b)(2)(A)(iii)(I). As noted, this section specifically states that the secured payments are those scheduled as contractually due "*following the date of the petition.*" (emphasis added). Consequently, measuring a debtor's secured-debt expenses beginning on the date the plan is confirmed (and not on the date the petition is filed) would render the specific language of § 707(b)(2)(A)(iii)(I) meaningless. *See, e.g., In re Smith*, 401 B.R. 469, 475 (Bankr. D. Wash. 2008).

Further, Trustee's reliance on the "as of the effective date" language in § 1325(b)(1) is misplaced. This phrase simply "'dictates *when* the plan has to provide for payment of all of the debtor's disposable income to unsecured creditors,' not what the amount of the payment will be, which is a calculation to be 'made as of the petition date.'" *Smith*, 401 B.R. at 475 (citing *In re Quigley*, 391 B.R. 294, 311 (Bankr. N.D.W. Va. 2008)) and *In re Burmeister*, 378 B.R. at 231).

Here, Debtor and Trustee stipulated that Debtor's obligations to creditors Chase and Di-Tech "were . . . contractually due" on the date her petition was filed.

MEMORANDUM OF DECISION - 9

*See* Doc. No. 40 ¶ 5 at 2. Thus, as the Court construes the relevant statutory language, Debtor properly included the $924.00 monthly mortgage payments on the condominium on line 47 of Form 22C.

Allowing Debtor to deduct the mortgage expense is also consistent with *Kagenveama*'s approach to the means test in chapter 13 cases. To be sure, *Kagenveama* did not address this precise issue. Indeed, *Kagenveama* did not even directly address the expense side of the projected-disposal-income calculus.[11] As such, there is arguably room for this Court to hold that Debtor's secured-debt expenses, as defined under § 707(b)(2)(A)(iii), are to be viewed in a forward-looking rather than a historical or date-of-filing manner.

One bankruptcy court within the Ninth Circuit has done just that. *See In re Reyes*, 401 B.R. 910, 913-14 (Bankr. C.D. Cal. 2009). In *Reyes*, the debtors included secured-debt expenses attributable to a junior lien on their home, even though they intended to strip the lien. *Id.* That court held that the amounts owing to the junior lienholder were not contractually owing under § 707(b)(2)(A)(iii) and, therefore, debtors could not properly include them in calculating their secured-debt

---

[11] Note, however, that although *Kagenveama* focused on the correct interpretation of "projected disposable income," the difference in Kagenveama's income arose due to a difference in calculating that debtor's expenses on Form 22C. Kagenveama's monthly gross income was identical on both Schedule I and Form 22C, but when Kagenveama recalculated her expenses pursuant to § 707(b)(2), her disposable income (as reported on Form 22C) was a negative number, while schedule J reflected monthly net income of approximately $1,500.00. *See* 541 F.3d at 871.

MEMORANDUM OF DECISION - 10

expense. *Id.*

On the other hand, another bankruptcy court decision in this circuit, *Smith*, held that § 707(b)(2)(A)(iii) allows debtors to deduct secured-debt payments on surrendered collateral because the payments at issue "were scheduled as contractually due as of the petition date . . . ." 401 B.R. at 475. As that court pointed out, "it would . . . be inconsistent to apply a backward-looking approach to income, yet adopt a forward-looking approach in determining expenses . . . . It would be similar to having a business employ two different accounting systems." *Id.* at 474.

This Court finds the analysis in *Smith* more persuasive, and it will reach the same conclusion here.[12] Under § 707(b)(2)(A)(iii)(I), Debtor is entitled to deduct the $924.00 monthly mortgage expense on the Moscow condominium as contractually due her secured creditors despite her stated intention to surrender that property and to not make such payments under her Plan.[13]

---

[12] The Court notes that *Smith* is on appeal to the Ninth Circuit Bankruptcy Appellate Panel, and it appears from the BAP's public docket that the court recently heard oral argument but has not yet issued the decision.

[13] Trustee's arguments lacked citation to or analysis of many of the foregoing authorities. In addition, his attempt to support the objection through analogy or extension of other decisions, such as that in *Ransom v. MBNA Bank (In re Ransom)*, 380 B.R. 799, 803-06, 808 (9th Cir. BAP 2007) (focusing on the word "applicable" in § 707(b)(2)(A)(ii)(I)), and holding that a chapter 13 debtor was not entitled to the standard vehicle-ownership deduction because he owned his vehicle free and clear of liens) was not persuasively advanced.

MEMORANDUM OF DECISION - 11

### C. Trustee's objection to Debtor's claimed rental expense

The next issue is whether Debtor may claim both the $924.00 mortgage debt expense along with the full $650.00 allowance for mortgage/rent expense under the Local Standards for Housing and Utilities.

Trustee argues that by claiming both expenses, Debtor has improperly "double dipped" with regard to her housing expenses. Presumably, Trustee relies on this Court's decision in *Meek*, 370 B.R. 294.

As explained in *Meek* and other cases, there is a potential for debtors to double dip with regard to housing expenses, because debtors may, in theory, claim the standard allowance for mortgage/rent expense under § 707(b)(2)(A)(ii)(I), while also claiming a mortgage payment under § 707(b)(2)(A)(iii)(I). *See, e.g., id.* at 311-12; *In re Hardacre*, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006). Courts have disallowed such double dipping because of the following "notwithstanding sentence" contained in § 707(b)(2)(A)(ii)(I):

> Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

*See, e.g., Meek*, 370 B.R. at 311 (holding this sentence requires debtors to "'deduct from the IRS Standard expenses . . . their monthly mortgage and car payments to avoid double-dipping'") (citing *McGuire*, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006)); *see also, e.g., Hardacre*, 338 B.R. at 727.

In *Meek*, for example, the debtors claimed the standard $748.00

MEMORANDUM OF DECISION - 12

mortgage/rent allowance at line 25B of Form 22C in addition to claiming their actual mortgage expense of roughly $1,400.00 as a secured debt at line 47. 370 B.R. at 310-11. The Court disallowed the double dip. *Id.* at 313.

*Meek* is inapplicable here. The Meeks had just one housing expense – their mortgage – but attempted to claim both a mortgage/rent allowance and a mortgage expense. The double-dip was, therefore, obvious and the prohibition of the "notwithstanding sentence" clear. Varner, on the other hand, rents an apartment in Lewiston and, at filing, was also contractually obligated to pay the mortgage expense on the Moscow condominium. In short, Varner has two separate deductions to her current monthly income (a mortgage/rent expense and a secured-debt expense), while the Meeks had just one (a mortgage/rent expense, which had to deduct secured debt thereon to satisfy § 707(b)(2)(A)(ii)(I)). Varner has not double dipped. *Cf. In re Turner*, 376 B.R. 370, 379-80 (Bankr. D.N.H. 2007) (debtors who owned four cars – two free and clear and two encumbered by liens – did not double-dip by claiming the secured-debt expense on the two encumbered cars and the standard deduction for the other two); *In re Crawley*, 2009 WL 902359, *1 n.5, *4, and *10 (Bankr. E.D. Va. Feb. 23, 2009) (double-dip not at issue, but in performing means-test calculations, court allowed debtors' rental expense for an apartment in addition to secured-debt expense for two homes).

This conclusion is supported by a strict application of the means test and,

MEMORANDUM OF DECISION - 13

more specifically, the Local Standards. Returning to § 707(b)(2)(A)(ii), a debtor's applicable monthly expense amount includes, among other things, housing expenses as established by the "Local Standards." § 707(b)(2)(A)(ii)(I). To determine their applicable housing expenses under the Local Standards, debtors refer to the United States Trustee/IRS web-based data, which, in turn, requires debtors to establish their county of residence and household size. *See* note 3, *supra.* Debtor here used the $650.00 "mortgage/rent" figure for a one-member family in Nez Perce County (where Lewiston is located), rather than the $751.00 "mortgage/rent" figure applicable to such a household in Latah County (where Moscow is located). In order to comply with § 707(b)(2)(A)(ii)(I), should Debtor be required to offset the mortgage on the Latah County property against the housing expense incurred in Nez Perce County?

There is no easy answer to this question, and the foregoing discussion illustrates the thorny problems that arise from a poorly worded statute. Yet, *Kagenveama* instructs courts to apply it as written. 541 F.3d at 875. Since in this case there is no secured debt claimed under § 707(b)(2)(A)(iii) that relates to the housing expense incurred by Debtor in Nez Perce County and claimed under the Local Standards per § 707(b)(2)(A)(ii), this Court concludes she need not deduct any mortgage debt from her housing expense in order to comply with the "notwithstanding sentence" of § 707(b)(2)(A)(ii).

MEMORANDUM OF DECISION - 14

The broader point is that debtors may deduct secured-debt expenses for numerous items under § 707(b)(2)(A)(iii)(I) – including vacation homes (*i.e.,* something other than a primary residence).[14]  *See generally* Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 274 (Spring 2005) ("for purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible").  This is true even if a debtor claims standard expenses, including mortgage/rent expenses.  Consequently, Debtor may claim both the $650.00 standard mortgage/rent expense and the $924.00 secured-debt expense.[15]

The result in this case is to allow Debtor to propose a plan that pays substantially less than she is capable of paying, *see* Doc. No. 1 at sched. I, J, and to do so by claiming a reduction against monthly income for mortgage debts she has not paid for a substantial period of time prior to filing and for which she has no stated intention to pay under her Plan.  The reduction also gives her a negative monthly disposable income which, under *Kagenveama*, allows for a plan of 36 months rather than the 60 months Debtor's above-median income status would normally require.  It is ironic that Congress professed an intent to require chapter

---

[14]  Of course, such deductions may well raise good faith issues.

[15]  There is contrary authority.  *See In re Skaggs*, 349 B.R. 594, 600 (Bankr. E.D. Mo. 2006) (debtor improperly double dipped by claiming the standard rental allowance in addition to secured-debt expense for a mobile home, which debtors vacated prior to filing bankruptcy).

MEMORANDUM OF DECISION - 15

13 debtors to pay creditors where able, but the mechanism created to achieve that intent – in this case at least – yields the opposite result. *Kagenveama*, however, says that it is up to Congress, and not the courts, to resolve this problem. 541 F.3d at 875.

### D. Trustee's good-faith objections

Trustee next contends Debtor did not file her petition or her Plan in good faith, as required by § 1325(a)(3) and (7).[16] In his briefing, however, Trustee focuses on Debtor's proposed Plan, and identifies no issue regarding Debtor's alleged lack of good faith in filing her petition. The Court therefore denies the § 1325(a)(7) objection, and focuses only on § 1325(a)(3).

Trustee argues that "[t]he lack of good faith is created by [Debtor's] . . . failure to pay all of her disposable income into the plan." Doc. No. 35 at 2. Here, Trustee relies primarily if not solely on the claimed $924.00 mortgage expense, arguing that because this expense will evaporate upon confirmation, Debtor's Form 22C "does not accurately reflect her disposable income." *Id.* He identifies

---

[16] Sections 1325(a)(3) and (7) provide as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> . . .
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law.
>
> . . .
>
> (7) the action of the debtor in filing the petition was in good faith.

MEMORANDUM OF DECISION - 16

no other conduct or fact evidencing a lack of good faith.

### 1. Good-faith standard

The standards relevant to good-faith objections were addressed by this Court in *In re Hieter*, 09.1 I.B.C.R. 28, 30-31, 2009 WL 692301 (Bankr. D. Idaho Mar. 13, 2009) (discussing § 1325(a)(3) and (7)), and *In re Stitt*, 403 B.R. 694, 08.4 I.B.C.R. 167 (Bankr. D. Idaho 2008). As *Stitt* explained, the totality-of-the-circumstances approach articulated by the Ninth Circuit in pre-BAPCPA cases remains viable today. 403 B.R. at 703.

Under this approach, "'the sufficiency of the assets devoted to the plan is not a basis for a finding of lack of good faith under § 1325(a)(3), unless there is a showing of some sort of manipulation, subterfuge, or unfair exploitation of the Code by the debtor.'" *Id.* (citation omitted). But this approach also recognizes that even where debtors have satisfied the mechanical requirements of § 1325(b), a more subjective analysis of the debtors' good faith and the totality of the circumstances is required. *Id.*

To determine any given debtor's good faith (or lack thereof), bankruptcy courts must "'tak[e] into account the particular features of each Chapter 13 plan.'" *In re Yochum,* 96.2 I.B.C.R. 77, 78 (Bankr. D. Idaho 1996) (citing *In re Porter,* 102 B.R. 773, 775 (9th Cir. BAP 1989)). Additionally, "[t]he Ninth Circuit has stated that a good faith test 'should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and

MEMORANDUM OF DECISION - 17

purposes of Chapter 13.'" *Hieter*, 09.1 I.B.C.R. at 30 (citing *Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1444 (9th Cir. 1986)).

More specifically, the court should consider:

(1) whether the debtor has misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner;

(2) the debtor's history of filings and dismissals;

(3) whether the debtor's only purpose in filing for Chapter 13 protection is to defeat state court litigation; and

(4) whether egregious behavior is present.

*Id.* (citing *Ho v. Dowell (In re Ho),* 274 B.R. 867, 876 (9th Cir. BAP 2002)).

Additionally, the Court recognizes that a debtor bears the burden of establishing that her plan is filed in good faith. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir. BAP 1997); *Hieter*, 09.1 I.B.C.R. at 30.

### 2. Application of the good-faith standard

The problem with applying the good-faith standard in this case is that, besides identifying the debate between the parties, and among courts nationwide, over the inclusion or exclusion of the contract debt where the collateral is to be surrendered, Trustee has identified no other relevant fact or issue – such as misrepresentation of fact or other conduct identified in *Ho*, 274 B.R. at 867. Recall, Trustee presented no evidence and called no witnesses. But, by the same token, Debtor failed to specifically explain why the totality of circumstances

MEMORANDUM OF DECISION - 18

supports a conclusion that she has filed her Plan in good faith. Like Trustee, she presented no evidence and called no witnesses.

Rather than resolving the good-faith issue on such a bare record, the Court will instead set a further hearing, at which time the parties may present evidence and further argument regarding the good-faith issue.

### E.     Trustee's objection to the Plan's "tax refund language"

Finally, Trustee at one point asserted that he objected to Debtor's Plan's "Tax Refund Language." Doc. No. 35 at ¶ 13. Trustee's explanation of this objection in his brief is:

> The debtor has provided copies of her 06' and 07' federal and state returns. Refunds for 2006 were $1,832 from IRS and a liability of $409 for the State of Idaho. The 2007 refunds were $3,680 from the IRS and a refund of $915 from the State of Idaho.

Doc. No. 39 at 2. *See also id.* ("The debtors tax returns indicate that there is an overstatement of deductions by virtue of the refunds received in the tax years 2006 and 2007.").

But Debtor's Plan obligates her to turn over "all net income tax refunds" during the applicable commitment period. Doc. No. 5 at § 1.2.1. Trustee has failed to specifically articulate why this "tax refund language" is objectionable. The Court will overrule the objection.

MEMORANDUM OF DECISION - 19

**CONCLUSION**

The Court will reserve a decision on Trustee's good-faith objection, pending supplementation of the record and hearing. Trustee's remaining objections will be overruled. The Court will enter a separate Order consistent with this Decision.

DATED: May 22, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20